## LEMMON *v.* KIRKLAND.

---

EQUITY; INJUNCTION; FRATERNAL ASSOCIATIONS; NAMES; PLEADING.

1. Courts of equity do not exercise jurisdiction to inquire into and adjudicate the right of different charitable or religious associations to hold themselves out to be the regular and only accredited representative of some particular order or religious system, but there must be some pecuniary injury resulting from the use of a name that may have been adopted by another to warrant inquiry and justify equitable relief. (Following *Most Worshipful Grand Lodge F. & A. M.* v. *Grimshaw,* 34 App. D. C. 383.)

2. Under a bill in equity by one claiming to be the supreme grand secretary of a lodge of a fraternal order, and other members, against one who is said to be a member of a spurious lodge of the order, and who claims to be supreme grand secretary of such spurious lodge, and who, it is also claimed in the bill, is receiving money belonging to the institution which should be paid to the plaintiff supreme grand secretary, it will not be assumed that the defendant is receiving money belonging to the plaintiff's lodge, but the bill will be interpreted to mean that the defendant is receiving money as supreme grand secretary of the so-called spurious lodge, which interpretation will negative the theory of pecuniary injury to the plaintiff; nor will allegations in such bill that the defendant has records and books in his possession belonging to plaintiffs' order, which he refuses to turn over to the plaintiffs, constitute ground for equitable relief in the absence of any allegation to show that the books are of value, or that the plaintiffs have no copies of them; nor will allegations in such bill that the defendant has received assessments and contributions for support of a home for indigent

and needy members of the order, which he has failed to turn over to the proper authorities of the order, entitled the plaintiff to equitable relief, where it also appears from the bill that the home is a separate and distinct enterprise managed by its own directors, so that if anyone is entitled to demand an accounting by the defendant it is such board of directors; and where such a bill states that the defendant was formerly supreme grand secretary of the order, but fails to state the length of time for which he was elected, it will not be assumed that his term of office did not extend beyond the date of the election of his alleged successor.

No. 2871.   Submitted February 9, 1916.   Decided March 6, 1916.

HEARING on an appeal by the plaintiffs from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for an injunction.                                *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the District dismissing appellants' bill.   We here reproduce the carefully prepared opinion of the learned trial justice:

"This is a motion to dismiss the second amended bill on various grounds, but the only one necessary to be considered is that it does not state facts sufficient to constitute a cause of action.

"The plaintiffs sue on behalf of themselves and other members of the Loyal Orange Institution of the United States of America, a fraternal order, the government of which it is alleged is by its constitution and general laws vested in a supreme grand lodge and certain other lodges, which grand lodge is the highest body of such order, and 'its highest governing judicatory in the United States,' and that the order 'holds allegiance to the Grand Orange Council of the World.'   It is claimed that the defendant, who was formerly supreme grand secretary, was expelled from the order, and that he was succeeded in such office by the plaintiff Lemmon; that the defendant 'has allied himself with a rebellious faction of said supreme grand lodge composed of members who have been suspended and expelled

from said order, which faction has endeavored to institute itself into a supreme grand lodge, but that such action has not received the recognition of any of the governing bodies of said order, and has no standing, rights, or authority under the constitution or laws of the order, nothwithstanding the fact that said action is without authority or right, the officers of said spurious lodge composed of said rebellious faction wrongfully proclaim said spurious lodge to be a supreme grand lodge much to the prejudice and injury of the lodges and members of the aforesaid order.' The dispute then is in effect between two sets of persons claiming to be the regular and only creditable representatives of this order.

"It must be assumed that neither order is engaged in business for a profit. Such being the case, the principles upon which a court of equity acts or refuses to act have been established for this District, and a statement of them will be found in *Most Worshipful Grand Lodge, F. & A. M.* v. *Grimshaw,* 34 App. D. C. 383, in which case the court said at page 385: 'The principle upon which courts of equity proceed in restraining the simulation of names is not that there is property acquired by one party in the name, but to prevent fraud and deception in the dealing with the party charged with the simulation of a name used by another in a similar business or manufacture. *Original La Tosca Social Club* v. *La Tosca Social Club,* 23 App. D. C. 96, 104. Courts of equity do not exercise jurisdiction to inquire into and adjudicate the right of different associations for charitable or religious objects to hold themselves out to be the regular and only accredited representatives of some particular order or religious system. There must be some pecuniary injury resulting from the use of a name that may have been adopted by another, to warrant inquiry and justify relief. The injury must not be fanciful or sentimental, but real. It must be substantial and such as a court of equity, upon principles of justice, will interpose to prevent *Original La Tosca Social Club* v. *La Tosca Social Club,* supra, p. 105.' There is no allegation in the bill to the effect that any person has dealt with the defendant and his faction under the mistaken assump-

tion that he was dealing with the plaintiffs and their faction, nor is there any allegation of an actual pecuniary loss to the plaintiff's faction unless it is to be found in the following allegation in the bill; namely, 'that the said defendant, although not a member of said institution, is pretending to be and is assuming without authority to act as the supreme grand secretary of the Loyal Orange Institution of the United States of America, and is proclaiming himself as such, and is endeavoring to usurp the powers and authority of said office without authority or right, and has been and now is receiving moneys belonging to said institution which should be paid to the aforesaid George T. Lemmon as the proper incumbent of aforesaid office and the proper custodian of said funds.' In view of the allegations in the bill to the effect that the defendant is a member of a spurious supreme grand lodge, the statements so quoted cannot be taken as the equivalent of an allegation that he, under a pretense that he is the supreme grand secretary of the lodge under the control of the plaintiff's faction, is receiving money, but must be construed to mean that he is receiving money as supreme grand secretary of the so-called spurious lodge. If the pleader meant otherwise under the circumstances he should have stated so definitely, and to repeat, as it is not claimed that any of those paying the money believe that they are paying it into the lodge controlled by the plaintiff's faction, the allegations in regard to such receipt do not show a pecuniary injury to the plaintiffs and those associated with them in the sense intended by the court of appeals in *Most Worshipful Grand Lodge, F. & A. M.* v. *Grimshaw, supra.*

"Another allegation in the bill is that the plaintiff Lemmon as supreme grand secretary is 'entitled to receive on behalf of said orders all records, books, and other property in the possession of the defendant belonging to said order,' but that the defendant has refused to turn the same over although a demand for them has been made. Assuming that such allegation sufficiently states that the defendant has records and books in his possession, it is not a sufficient ground for equitable relief. From all that appear the books and records may be of no par-

ticular value; the plaintiff and his associates may have copies of them and they may be of practically no importance. The absence of any description of the books is noticeable as is also the vagueness of the words 'other property.'

"Another paragraph of the bill is in part as follows: 'That said order of the Loyal Orange Institution of the United States of America provides and maintains at Hatboro, Pennsylvania, a permanent home known as the Orange Home for the care and support of its indigent and needy members, orphan children of those who have been members, and others   *   *   *; that the management of the said home is vested in a board of fifteen directors; that the first board of directors was appointed by the plaintiff Lemmon when he was supreme grand master, and since that time the directors of said home have been elected by the supreme grand lodge of which the plaintiffs are officers; that said home since its institution has been controlled and governed by the aforesaid directors and no others; that said home is supported and maintained by assessments and contributions made by the lodges and individual members of the order; that by the constitution and laws of said order the said assessments and contributions are to be paid to the supreme grand secretary of the order.' The bill then states that the defendant has received assessments and contributions to said home which has failed to turn over to 'the proper authorities of said order,' and is now withholding or causing such contributions to be withheld so that they are not being received by the home; and, further, that the aforesaid order levies an assessment against each member thereof of $1 per annum for the support of said home, but that the home or said order has not received anything from the alleged spurious grand lodge, nor from the defendant, nor from anyone associated with him, towards its maintenance and support since August 25, 1914. The plaintiff demands discovery of the amount so received, alleging that they are entitled on behalf of themselves and other members of the order to an accounting.

"These allegations, if they amount to anything, are equivalent to a statement that the defendant is trustee, not for the plaintiffs

nor the lodge of which they claim to be members, but for the Orange Home. There is no statement in the bill from which it can be inferred that the home belongs to the supreme grand lodge, but it appears rather that it is under the management of a board of directors, who, so far as the bill shows, may or may not be members of any supreme grand lodge; but, however that may be, so far as the bill shows the Orange Home is a separate and distinct enterprise, and if anyone is entitled to demand of the defendant the payment of money alleged to have been collected by him it is the board of directors who are so entitled.

"The bill alleges that the grand lodge has a constitution and by-laws, a copy of which, however, was not filed with the bill, and so far as the material allegations of the bill are concerned, with one possible exception, the pleader has contented himself with stating his conclusions as to the powers of various officials and as to the legality of their election; likewise, as to the legality of the action leading to the alleged expulsion of the defendant from the supreme grand lodge. It is stated that the defendant was at one time supreme grand secretary, but the length of the term for which he was elected is not stated. It may be that such term extended beyond the date of the election of his alleged successor; consequently, the bill should state verbatim, or in substance, the provisions of the constitution and by-laws that control not only the question of his removal, but the election of a successor.

"It would prolong this decision unnecessarily to point out numerous other respects in which the allegations in the bill are insufficient as statements of fact upon which to base relief, and it is not necessary to pass upon the other grounds of the motion to dismiss."

(Signed) Walter I. McCoy, Justice.

*Mr. Leon Tobriner* for the appellants.

*Mr. Ralph P. Barnard, Mr. Guy H. Johnson,* and *Mr. Robert L. Williams* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

We fully concur in the view expressed in the foregoing opinion that, in substance and effect, this is an attempt by one faction of the "Loyal Orange Institution of the United States of America," a fraternal order, to obtain recognition by the court as the "duly constituted head of said order in the United States." In other words, a careful reading of the bill leaves no room for doubt that this is merely a controversy between two factions of a fraternal order. For the reasons stated by the learned trial justice, the decree will be affirmed, with costs.

*Affirmed.*